# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
### ROANOKE DIVISION

CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

APR 1 2 2007

JOHN F. CORCORAN, CLERK
BY: _____
DEPUTY CLERK

| | | |
|---|---|---|
| WILLIAM D. WILLIAMS, | ) | |
| Plaintiff, | ) | **Civil Action No. 7:06-cv-00675** |
| | ) | |
| v. | ) | **MEMORANDUM OPINION** |
| | ) | |
| TERRY O'BRIEN, <u>et</u> <u>al</u>., | ) | **By: Hon. Glen E. Conrad** |
| Defendants. | ) | **United States District Judge** |

Plaintiff William D. Williams, Federal Register Number 15409-008, filed a civil rights action pursuant to <u>Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics</u>, 403 U.S. 388 (1971) with jurisdiction vested pursuant to 28 U.S.C. §1331. Plaintiff, an inmate at United States Penitentiary, Lee County ("USP Lee") in Jonesville, Virginia, alleges that defendants, officers at USP Lee, violated his constitutional rights. Plaintiff seeks damages in excess of one million dollars.

Plaintiff admits that he failed to exhaust all available administrative remedies regarding most of the constitutional claims raised in his complaint. Accordingly, because Williams did not exhaust his administrative remedies before filing this civil rights action, the court will dismiss those claims pursuant to 42 U.S.C. § 1997e(a). However, regarding plaintiff's claims of deliberate indifference to his dental needs and legal mail violations, it is apparent that he exhausted his administrative remedies. Those claims will be dismissed pursuant to 28 U.S.C. § 1915A(b)(1) for failure to state a claim upon which the court may grant relief.

To the extent plaintiff states a claim pursuant to the Federal Torts Claims Act ("FTCA"), 28 U.S.C. §§ 2671-2680, with jurisdiction vested pursuant to 28 U.S.C. §1331, plaintiff has satisfied the relevant exhaustion requirement. However, plaintiff's FTCA claim will be dismissed pursuant to 28 U.S.C. § 1915A(b)(1) for failure to state a claim upon which the court may grant relief.

## I. Factual Summary[1]

In his original complaint, plaintiff alleges that defendants interfered with the administrative remedy process, retaliated against him "for complaining and utilizing the remedy process," inflicted "cruel and unusual punishment through the unconstitutional and illegal conditions of the Segregation Housing Unit" ("SHU"), were intentionally or deliberately indifferent to his dental treatment needs, and violated his "attorney/client and special mail priviledges [sic] in legal correspondence."

### A. Interference with the Administrative Remedy Process

Plaintiff states that, on September 21, 2006, he "filed a BP-8 (MB6-258)[2] with Counselor M. Bennet challenging the totality of the SHU conditions . . . . The BP-8 listed ten conditions and requested they be corrected." On September 26, 2006, the BP-8 was returned to plaintiff with the explanation that it contained too many issues and that plaintiff would need to file a grievance regarding each separate issue. In plaintiff's view, however, "[s]uch filings, given only one BP-8 may be filed at a time, and each one takes 5-10 days to process, would take months to process." Thereafter, on September 27, 2006, plaintiff filed another "BP-8 (MB6-263) on the 'Rejection' of the BP-8 MB6-258 claiming it consisted of only one issue, 'the totality of SHU conditions as violative of the U.S. Constitution.'" On October 10, 2006, plaintiff received a response to that grievance "stating it raised to [sic] many issues and denying relief."

Plaintiff continued to dispute the rejection and denial of his grievances, arguing that Bureau

---

[1] The factual summary has been adduced from plaintiff's pleadings. The court will discuss additional facts as necessary in its analysis.

[2] "BP-8," "BP-9," "BP-10," and "BP-11" refer to Bureau of Prison forms that prisoners are required to fill out at specified levels of the administrative remedies process. The numbers plaintiff stated in parentheses are tracking numbers.

2

of Prisons ("BOP") policy "states 'multiple <u>unrelated</u> issues' may be cause for rejection of administrative remedies, and that 'totality of conditions claims' . . . are valid and recognized by the BOP and the courts." He maintains that further attempts to avail himself of the administrative remedy process regarding this issue were thwarted by various prison officials, who purportedly lost a BP-9 plaintiff gave to a staff member on October 19, 2006, in pursuit of his argument that he could submit grievances regarding "the totality of SHU conditions." However, he admits that subsequently, on October 25, 2006, prison officials gave him blank BP-9 forms. Plaintiff adds that, on October 26, 2006, he mailed a new BP-9 to Warden O'Brien.[3] When this last grievance was returned on November 1, 2006, he did not appeal it any further.

## B. Retaliation

On September 28, 2006, plaintiff filed separate BP-8s regarding "the inability of inmates to flush SHU toilets and the lack of timely thirty minute rounds by SHU officers" and "inadequate dental treatment and delay." On September 29, 2006, plaintiff and another prisoner were taken to a dental appointment. En route to the appointment, plaintiff and the other prisoner were placed in separate holding cells and were forced to remove their clothes and stand naked "in full view" of two female staff members and "numerous other staff." Plaintiff characterizes this incident as a "strip search." He adds that the two female staff members "actually looked" at him while he was disrobed for this "strip search."

Subsequent to this "strip search," plaintiff dressed, was shackled and outfitted with a "black box," and was taken to his dental appointment. Plaintiff maintains that on October 4 and 19, 2006,

---

[3] Mailing a BP-9 to the Warden, via certified mail or otherwise, is not an acceptable means of filing. The BOP has established administrative remedy procedures with specified filing requirements that cannot be bypassed. <u>See</u> <u>infra</u>.

3

he was taken to dental "without a strip search, shackles, or a black-box." "This," he adds, "is the usual procedure." In plaintiff's view, this "strip search" was conducted in retaliation against him for having filed, in the days preceding the "strip search," "a grievance on the SHU and dental," "BP-8 (MB6-263) . . . on the SHU toilet and officer rounds," and a BP-8 on "the totality of the SHU conditions."

### C. SHU Conditions

Plaintiff restates his claims regarding the conditions in the SHU as "taken from BP-8 MB6-258." He states that inmates in the SHU "cannot flush toilets," that "feces and waste sit for extended periods," that "staff withhold flushes for imagined infractions, and that "clogs often take hours to clear." He alleges that cleaning supplies are "inadequate" and are "infrequently distributed" and that "cells are not cleaned adequately between occupancies and are filthy." Plaintiff states that "inadequate hygiene supplies are furnished," stating that SHU inmates are not allowed "shampoo, combs, dental floss or picks," and adding: "toothbrushes are 4" long and too stiff; finger and toe nail clippers are rarely made available and are chipped and dirty; alternate items are not sold by commissary." Staff security rounds, according to plaintiff, "are routinely missed for hours," and "administrative staff avoid rounds and cover for each other – thereby depriving inmates of meaningful access to unit team staff."

The cells in the SHU, plaintiff states, "are too small for 'daily in-cell' time with double occupancy." He complains that "there's no stool/chair," the "shower water is cold," the "drain reeks," the "shower curtains are old-torn-filthy and scarce," the "bunk bed has no step-up and [the] top bunk is very high." He adds that the "sinks are attached to toilets which are often full of waste" and that inmates in the SHU must drink, wash, and brush their teeth "above an open reeking toilet."

4

The mattresses are "torn and cut, missing stuffing, and are not disinfected between uses." Clothing and bedding "is old, torn, stained, and worn-out," and the laundering of clothing and bedding "is improper or inadequate."

Plaintiff complains that "the law library is inadequate with no viable access to supplemental materials which results in available materials which do not meet even minimal requirements. He further complains that "access is too limited" and that "the leisure library is totally inadequate." "Food service," plaintiff states, "is inadequate," adding: "hot food is cold, not served or maintained at proper safe temperatures, portions are missing or adulterated by foreign matter, and food is improperly/inadequately prepared." He complains that phone access and writing supplies are "inadequate." Commissary access is "too limited" and that "too few items" are available. He adds that "the mail room or SHU staff withhold all magazine subscriptions from inmates and most magazines are either lost or destroyed."

In plaintiff's view, "the totality of the SHU conditions rise to the level of cruel and unusual punishment in violation of the Eigth [sic] Amendment . . . ." These violations, plaintiff explains, "include the right to an adequate law library, the inadequacies of which interfer [sic] with access to the courts" and the denial of magazines, including "religious magazines."

### D. Dental Treatment

Plaintiff avers that, on December 4, 2003, Dr. Moore, then the dentist at USP Lee, restored plaintiff's tooth number 13. Plaintiff states that, on November 18, 2003, in preparation for the December 4, 2003, appointment, x-rays were taken of his teeth. The x-rays indicated a carie in tooth number 11. According to plaintiff, on December 4, 2003, Dr. Moore ordered a restoration of tooth number 11, and scheduled an appointment for January 15, 2004. Between December 4, 2003, and

5

January 15, 2004, Dr. Moore resigned from his position with USP Lee. For the next year, plaintiff alleges, USP Lee had no full-time dentist.

Plaintiff states that, between March 1, 2004, and February 3, 2005, he sent "numerous requests to dental . . . about pain and infection" in tooth number 11, and "the failure of dental to honor" the appointment scheduled for January 15, 2004. He adds that, during a dental cleaning appointment on June 3, 2004, x-rays indicated "caries under restorations" on teeth numbers 3 and 28, and a "growing carie" in tooth number 11.

On January 16, 2005, he filed a BP-8 regarding pain in tooth number 11, the "denied" appointment of January 15, 2004, "and the year of delay." He states that, on January 21, 2005, he received a reply to that BP-8 that apologized for the delay, admitted the "denied" appointment of January 15, 2004, and stated that USP Lee had no full-time dentist.

Pursuant to an examination on January 24, 2005, plaintiff alleges that it was determined that tooth number 11 was "decayed and broken below the gum line." On February 3, 2005, a "relief dentist" began a root canal procedure. According to plaintiff, he sent "numerous requests" to dental between February 3, 2005, and October 4, 2006, regarding the "delay in completion of work" on tooth number 11, and "pain, infection, and blisters on the gum." On July 11, 2005, plaintiff alleges that he was taken to dental for treatment of tooth number 11, but that tooth 28 was causing such pain that it had to be treated instead. On September 26, 2005, plaintiff states, he submitted a dental request with the information that tooth number 3 had "cracked."

On September 29, 2005, a root canal was begun on tooth number 28, and tooth number 3 was restored. Plaintiff alleges that, on September 28, 2006, he filed a BP-9 regarding the delay in completing the work on tooth number 11. On that same date, he sent requests to dental regarding

6

teeth numbers 3 and 11. On October 19, 2006, work was completed on tooth number 11.

Plaintiff alleges that the foregoing acts caused or "fail[ed] to prevent . . . plaintiff's suffering from pain, infection, discomfort, anxiety, and mental pain and suffering" and that defendants knew "or should have known[] of the conditions and circumstances which were the proximate causes of the plaintiff's suffering." In plaintiff's view, defendants' "delay" in providing care for teeth 11, 3, and 28 constitutes "wanton callousness" and "deliberate indifference" on defendants' part in violation of the Eighth Amendment of the Constitution. Furthermore, he alleges that the BOP violated his constitutional rights between January 2004 and January 2205 by its "failure to provide a full time dentist." He adds that his rights have been violated by the denial of "adequate dental care from January[] 2005 to date due to inadequate staffing" because a full-time dentist has been provided "to treat a one year backlog of patients as well as maintain adequate routine and urgent care for 1,500 prisoners."

### E. Mail Violations

Plaintiff alleges that, on March 7, 2005, he notified USP Lee staff that he "would be receiving mail from several attorneys" and requested that this mail not be opened outside his presence. He states that, on the following dates, he received, through the "regular" mail system, "legal mail" that had been opened: April 18, 2005; May 3, 2005; June 16 and 27, 2005; October 11, 21, and 24, 2005; November 7, 15, and 23, 2005; and October 10, 2006. He adds that, on the following dates, he received opened mail that had been "clearly marked" as "special mail" or "attorney-client": August 30, 2005; October 10, 11, and 24, 2005; and October 11 and 13, 2006.

7

## II. Analysis

### A. Exhaustion of Administrative Remedies

In 1996, Congress enacted the Prison Litigation Reform Act ("PLRA") in an attempt to reduce the number of frivolous civil rights cases filed by prisoners. In the PLRA, Congress amended 42 U.S.C. § 1997e, the provision relating to prisoners' exhaustion of administrative remedies. As amended, that section requires that

> [n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a) (2000). By the plain language of the statute, exhaustion of administrative remedies is a precondition to the _filing_ of a prisoner's civil rights action; thus, a plaintiff who filed his lawsuit before exhausting administrative remedies cannot satisfy the § 1997e(a) requirement, even if he later demonstrates that he filed a grievance and appealed it to the highest extent of the prison's grievance procedure _after_ commencing the lawsuit. See Dixon v. Page, 291 F.3d 485 (7th Cir. 2002), _citing_ Perez v. Wisconsin Dep't of Corrections, 182 F.3d 532, 535 (7th Cir. 1999) (holding that an inmate complaint must be dismissed for failure to exhaust even if the inmate demonstrates that he filed a grievance and appealed it to the highest level of the prison's grievance procedure after commencing the lawsuit). A district court may sua sponte dismiss a complaint where a prisoner's failure to exhaust is apparent from the face of the complaint. Anderson v. XYZ Correctional Health Services, 407 F.3d 674, 683 (2005).

The United States Supreme Court has held that § 1997e(a) applies to "all inmate suits, whether they involve general circumstances or particular episodes, and whether they allege excessive

8

force or some other wrong." Porter v. Nussle, 534 U.S. 516, 532 (2002). The Court has also held that § 1997e(a) applies whether or not the form of relief the inmate seeks is available through exhaustion of administrative remedies. Booth v. Churner, 532 U.S. 731, 741 (2001). The exhaustion provision is mandatory, even in those instances where an inmate claims that exhaustion would be futile or the remedy inadequate. Id. at 741, n.6. For example, the inmate in Booth filed a grievance pursuant to the state prison's grievance procedure, but failed to appeal the denial to the intermediate or final appeal levels. Because the inmate failed to appeal the denial, the inmate was deemed to have failed to exhaust his administrative remedies. Id. at 735. Additionally, the Court in Booth held that even where inmates limited their "prayers for relief to money damages not offered through administrative grievance mechanisms . . . . Congress has mandated exhaustion clearly enough." Id. at 741.

Pursuant to 28 C.F.R. § 542.10, et seq., the BOP has established an administrative remedy procedure through which an inmate may seek a formal review of an issue or complaint relating to his confinement. If an inmate is unable to resolve his complaint informally, he may file a formal written complaint on the proper form within twenty calendar days of the date of the occurrence on which the complaint is based. See 28 C.F.R. § 542.14(a). If an inmate is not satisfied with the Warden's response to the formal complaint, he may appeal, using the appropriate form, to the Regional Director within twenty calendar days of the Warden's response. See 28 C.F.R. § 542.15(a). If the inmate is still dissatisfied, he may appeal the Regional Director's response to the Office of the General Counsel, located in the BOP Central Office in Washington, DC, using the appropriate forms. The inmate must file this final appeal within thirty calendar days of the date the Regional Director signed the response. See id. An inmate is not deemed to have exhausted his administrative remedies

9

until he has pursued his grievance through all levels.[4] See 28 C.F.R. § 542.15(a).

Significantly, the Supreme Court has held that, in the context of § 1997e(a), administrative law requires proper exhaustion of administrative remedies, which means using all steps that the agency holds out, and doing so properly, so that the agency addresses the issues on the merits. See, e.g., Woodford v. Ngo, 126 S.Ct. 2378, 2385 (2006) (reasoning, id. at 2387, that "[t]he text of 42 U.S.C. § 1997e(a) strongly suggests that the PLRA uses the term 'exhausted' to mean what the term means in administrative law, where exhaustion means proper exhaustion. Section 1997e(a) refers to 'such administrative remedies as are available,' and thus points to the doctrine of exhaustion in administrative law").

The instant complaint was received by the court on November 14, 2006. In an order entered on November 15, 2006, plaintiff was directed to execute a form verifying that he had exhausted the administrative remedies procedure and to submit accompanying documentation demonstrating such exhaustion. Plaintiff submitted neither. Instead, plaintiff submitted a "Motion for a Court Order Exempting the Plaintiff's Bivens Action from Exhaustion of the Administrative Remedy Process." In that motion, he argues that he should be exempted from exhausting his administrative remedies because of various defendants' having "interfered" with his access to the system.[5] He alleges that defendants' insistence that he file grievances regarding related issues, rather than a scattershot compendium of the "totality of the conditions in the SHU," and the Warden's refusal to accept a BP-

_____

[4] Several circuit courts of appeals have held that the failure to timely file an appeal with the General Counsel is a procedural default. See, e.g., Moscato v. B.O.P., 98 F.3d 757, 760 (3d Cir.1996) (a prisoner's "failure to satisfy the procedural rules of the Bureau's administrative process constitutes a procedural default").

[5] Plaintiff reiterated these arguments in his "Second and Supplemental Motion to Exempt Plaintiff's Action from Exhaustion of Administrative Remedy or in the Alternative to Rule Exhaustion Completed Due to Failures of the F.B.O.P. Administrative Remedy Process."

9 that plaintiff mailed to him in an attempt to bypass the administrative remedies procedure,

constitutes such interference. However, the exhaustion provision is mandatory, even in those

instances where an inmate claims that exhaustion would be futile or the remedy inadequate, Booth,

532 U.S. at 741, n.6., and in those instances where he claims "interference," plaintiff failed to appeal

to the final appeals levels.[6]

Plaintiff has failed to exhaust all available administrative remedies as to his claims of

interference with the administrative remedy process, his claims of retaliation against him "for

complaining and utilizing the remedy process," and his claim of "cruel and unusual punishment

through the unconstitutional and illegal conditions of the Segregation Housing Unit."[7] Plaintiff

provides, with his amended complaint, a series of prison-generated printouts documenting his access

_____

[6] The court notes that defendants' conduct, i.e., insisting that plaintiff abide by established rules and procedures governing the filing of administrative remedies, does not arise to the level of a constitutional violation. Moreover, inmates do not have a constitutionally protected right to participate in a grievance procedure. Brown v. Dodson, 863 F.Supp. 284 (W.D.Va.1994). See also Flick v. Alba, 932 F.2d 728, 729 (8th Cir. 1991) (federal regulations providing for administrative remedy procedure do not in and of themselves create liberty interest in access to that procedure). Inasmuch as inmates do not have a constitutionally protected right to participate in a grievance procedure, plaintiff's retaliation claim would therefore fail. In order to state a retaliation claim, the "plaintiff must allege either that the retaliatory act was taken in response to the exercise of a constitutionally protected right or that the act itself violated such a right." Adams v. Rice, 40 F.3d 72, 75 (4th Cir. 1994). Furthermore, an inmate must present more than conclusory allegations of retaliation. Id. at 74. To state a prima facie claim of retaliation under 42 U.S.C. § 1983 or Bivens, an inmate must allege facts showing that the exercise of his constitutional rights was a substantial factor motivating the retaliatory action. See, e.g., Hughes v. Bledsoe, 48 F.3d 1376, 1386 n. 11 (4th Cir. 1995), citing Mt. Healthy City School District Board of Education v. Doyle, 429 U.S. 274, 287 (1977); Wagner v. Wheeler, 13 F.3d 86, 90-91 (4th Cir. 1993). "Temporal proximity" between the inmate's protected activity and the allegedly retaliatory, official action "is simply too slender a reed on which to rest" a § 1983 retaliation claim. Wagner, 13 F.3d at 91. He must also allege that, as a result of the retaliatory action, he suffered some adverse impact on the continued exercise of his constitutional rights. American Civil Liberties Union v. Wicomico County, 999 F.2d 780, 784 (4th Cir. 1993) (finding that changes in prison regulations created a mere inconvenience to the exercise of constitutional rights and such inconvenience alone was not enough to constitution actionable retaliation).

[7] Plaintiff's exhausted the administrative remedies regarding his dental treatment claims and the alleged violations of his "attorney/client and special mail priviledges [sic] in legal correspondence." Those claims are discussed below.

11

to administrative remedies. That documentation clearly indicates that, among the claims raised in the instant complaint, the only administrative remedies plaintiff pursued to the final appeals level are those concerning his dental care and the opening of his mail. Moreover, although plaintiff maintains that grievance procedures were not available to him, his own evidence demonstrates that administrative remedies were available to him and that he has availed himself of the grievance procedure on at least sixteen occasions since January 28, 2005.[8] Plaintiff's own evidence clearly indicates that he did, in fact, have extensive access to the administrative remedy program and knew how to use it. Additionally, his own complaint admits that he attempted to bypass certain steps of the administrative remedies process because following the prescribed process "would take months."

Accordingly, inasmuch as plaintiff's failure to exhaust is apparent from the face of his complaint, see Anderson, 407 F.3d at 683, the court will dismiss, for failure to exhaust the available administrative remedies procedures pursuant to 42 U.S.C. § 1997e(a), plaintiff's claims of interference with the administrative remedy process, his claims of retaliation against him "for complaining and utilizing the remedy process," and his claims of "cruel and unusual punishment through the unconstitutional and illegal conditions of the Segregation Housing Unit."[9]

---

[8] Additionally, in his original complaint plaintiff admits that, at the time of filing, he had one regional appeal "currently pending."

[9] Inasmuch as plaintiff has failed to exhaust the available administrative remedies, which might toll the running of the statute of limitations, plaintiff is advised that he may be procedurally barred from pursuing these claims any further because they are untimely. As with § 1983 actions, Bivens actions are governed by the state statute of limitations applicable for general personal injury cases in the state where the alleged violations occur. Owens v. Okure, 488 U.S. 235, 239-40 (1989). Virginia has a two-year statute of limitations for general, personal injury claims. Va. Code Ann. § 8.01-243(a). Under these principles, a plaintiff bringing a civil rights action under § 1983 or Bivens in Virginia must do so within two years from the time when his action accrues. Id.

12

### B. Dental Claims

### 1. Eighth Amendment

### a. Statute of Limitations

As with §1983 actions, Bivens actions are governed by the state statute of limitations applicable for general personal injury cases in the state where the alleged violations occur. Owens v. Okure, 488 U.S. 235, 239-40 (1989). Virginia has a two-year statute of limitations for general, personal injury claims. Va. Code Ann. §8.01-243(a). Under these principles, a plaintiff bringing a civil rights action under § 1983 or Bivens in Virginia must do so within two years from the time his action accrues. Id.

However, the time of accrual of a cause of action under § 1983 or Bivens is a federal question. Nasim v. Warden, Md. House of Correction, 64 F.3d 951, 955 (4th Cir. 1995) (en banc). In Nasim, the United States Court of Appeals for the Fourth Circuit held that a cause of action under § 1983 accrues and the statute of limitations begins running "when the plaintiff possesses sufficient facts about the harm done to him that reasonable inquiry will reveal his cause of action." Id. An inmate's § 1983 action is commenced for purposes of the statute of limitations as soon as he delivers his complaint to prison authorities for mailing. Lewis v. Richmond City Police Depot, 947 F.2d 733 (4th Cir. 1991). Accordingly, in Virginia Bivens and § 1983 cases, if an inmate has not delivered his complaint to prison officials for mailing within the two-year period following the time when he knew or had reason to know of his alleged injury, that inmate is barred by the Virginia statute of limitations from bringing suit. When a court determines that the statute of limitations unquestionably provides an affirmative defense, the court may summarily dismiss the complaint as failing to state a claim upon which relief may be granted, pursuant to 28 U.S.C. § 1915A. See Todd

13

v. Baskerville, 712 F.2d 70 (4th Cir. 1983) (court may dismiss based on affirmative defense under predecessor statute).

Plaintiff signed and dated his complaint November 2, 2006; accordingly, the court assumes he delivered the complaint to prison officials on the same day. Therefore, any of plaintiff's claims that arose prior to November 2, 2004, are barred by the statute of limitations, are clearly no longer actionable under § 1983, and must be dismissed, pursuant to 28 U.S.C. § 1915A, as failing to state a claim upon which relief may be granted.[10]

Accordingly, the court will consider plaintiff's claims of denial of dental care in violation of the Eighth Amendment only for such claims that plaintiff states occurred between January 16, 2005, and October 19, 2006. All other dates plaintiff provides regarding dental treatment are outside the limitations period.

### b. Deliberate Indifference

In order to state a cognizable claim for denial of medical care under the Eighth Amendment, a plaintiff must allege facts sufficient to demonstrate a deliberate indifference to a serious medical need. Estelle v. Gamble, 429 U.S. 97, 104 (1976). To establish deliberate indifference, a plaintiff must present facts to evince that the defendants had actual knowledge of and disregard for an objectively serious medical need. Farmer v. Brennan, 511 U.S. 825 (1994); see also, Rish v. Johnson, 131 F.2d 1092, 1096 (4th Cir. 1997). "'A serious medical need' is 'one that has been

---

[10] Under Virginia law, "continuing treatment rule" tolls two-year statute of limitations in certain malpractice actions; under rule, statute of limitations begins to run not at time of initial act of malpractice but rather at termination of substantially uninterrupted course of improper examination or treatment by same physician for same or related illness or injury. See Robb v. U.S., 80 F.3d 884, 894-95 (4th Cir. 1996). This case is not a malpractice action. Moreover, an allegation of malpractice does not state a cognizable constitutional claim. See infra.

14

diagnosed by a physician as mandating treatment, or one that is so obvious that even a layperson would easily recognize the necessity for a doctor's attention.'" <u>Shelton v. Angelone</u>, 183 F.Supp.2d 830, 840 (W.D.Va. 2002) (quoting <u>Cox v. District of Columbia</u>, 834 F.Supp. 439, 441 (D.D.C. 1992).

A claim regarding a disagreement between an inmate and medical personnel over diagnosis or course of treatment and allegations of malpractice or negligence in treatment does not state a cognizable constitutional claim under the Eighth Amendment. <u>Wright v. Collins</u>, 766 F.2d 841, 849 (4th Cir. 1985); <u>Estelle</u>, 429 U.S. at 105-06. Additionally, an inmate is not entitled to unqualified access to health care; the right to medical treatment is limited to that treatment which is medically necessary and not to "that which may be considered merely desirable." <u>Bowring v. Godwin</u>, 551 F.2d 44, 47-48 (4th Cir. 1977). Claims of medical judgment are not subject to judicial review. <u>Russell v. Sheffer</u>, 528 F.2d 318 (4th Cir. 1975). Moreover, to bring an Eighth Amendment claim of deliberate indifference against non-medical prison personnel, an inmate must show that such officials were personally involved with a denial of treatment, deliberately interfered with a prison doctor's treatment, or tacitly authorized or were indifferent to the prison physician's misconduct. <u>Miltier v. Beorn</u>, 896 F.2d 848 (4th Cir. 1990).

Plaintiff has not made any showing that a constitutional right has been violated. Essentially, plaintiff asserts that it is unconstitutional for the BOP[11] not to have a sufficient number of dentists

---

[11] Inasmuch as plaintiff alleges that the BOP violated his constitutional rights by its "failure to provide a full time dentist," the BOP is not a proper defendant for such a claim under <u>Bivens</u>. As in cases brought against state actors under 42 U.S.C. § 1983, "[a]ny remedy under <u>Bivens</u> is against federal officials <u>individually</u>, not the federal government." <u>Randall v. United States</u>, 95 F.3d 339, 345 (4th Cir.1996) (emphasis added). Moreover, plaintiff's evidence shows that plaintiff obtained the necessary dental care, the absence of a full-time dentist notwithstanding.

15

employed at all times to provide complete dental care the very instant any dental issue arises. Although plaintiff believes that the institutional staff or dental staff failed to treat his dental needs by not providing treatment to him on a schedule that gratified his demands, such actions do not rise to the level of a federal constitutional violation. Moreover, the evidence indicates that the dental department at USP Lee did indeed provide extensive dental treatment to plaintiff, including antibiotics and Ibuprofen upon any complaint by plaintiff that he was in pain, as well as providing plaintiff with several root canals and dental restorations.[12] Plaintiff's claims amount, at best, to a disagreement over a course of treatment, and do not state a cognizable constitutional claim. Nor does plaintiff allege an objectively serious medical need, given the treatment he has received. Plaintiff's claims would arise, if at all, under state medical malpractice laws, and do not present any colorable Bivens claims.[13] See Estelle, supra, at 105-106.

Accordingly, the court finds that plaintiff has failed to state a claim under the Eighth Amendment for denial of medical care, and dismisses these allegations pursuant to 28 U.S.C. § 1915A(b)(1).

---

[12] To recapitulate: Plaintiff's own submissions show that he filed a BP-8 on January 16, 2005, regarding pain in tooth number 11. On January 21, 2005, he received a reply to that BP-8. Plaintiff was given a dental examination on January 24, 2005, and was treated with antibiotics and Ibuprofen. On February 3, 2005, tooth number 11 underwent a root canal procedure. On June 19, 2005, after reporting that tooth number 11 was causing him pain, plaintiff was again treated with antibiotics and Ibuprofen. On July 11, 2005, tooth number 28 was treated. He was seen in the dental department at least six additional times between July 11, 2005, and March 29, 2006. On September 29, 2005, a root canal was begun on tooth number 28, and tooth number 3 was restored. On October 19, 2006, work was completed on tooth number 11.

[13] Pursuant to 28 U.S.C. § 1367, the court could exert supplemental jurisdiction over a state medical malpractice claim. However, the court declines to do so, pursuant to 28 U.S.C. § 1367(c)(3), which provides that "district courts may decline to exercise supplemental jurisdiction over a claim . . . if . . . the district court has dismissed all claims over which it has original jurisdiction . . . ."

## 2. Federal Tort Claims Act

Stating his dental treatment claims in his complaint, plaintiff adds the following: "NOTE: This civil action is also an action pursuant to 28 U.S.C. [§] 2671 F.T.C.A. and 28 U.S.C. [§§] 2671-2680 on the denial of the tort claim and therefore the F.B.O.P. is a named defendant of significant consequence." Plaintiff does not further elucidate any claim under the FTCA.

In his complaint and amended complaint, plaintiff identifies a number of individual defendants and specifies actions undertaken by those defendants allegedly in violation of his constitutional rights. As discussed above, the claims against those individual defendants will be dismissed pursuant to the discussion of deliberate indifference to a serious medical need. There is no individual liability under the FTCA; remedies against the United States under the FTCA are the exclusive damage action available for torts committed by government employees acting within the scope of their employment. 28 U.S.C. § 2679(b)(1); Jordan v. Hudson, 879 F.2d 98, 99 (4th Cir. 1989). Even when suit against the United States is barred under one of the exceptions to the FTCA, no tort remedy is available against an individual employee. United States v. Smith, 499 U.S. 160, 165-66 (1991). Accordingly, construing plaintiff's complaint liberally, the FTCA claims he states against the United States consist of the following: that he was denied "adequate dental care" because of the "failure to provide a full time dentist" and because of "inadequate staffing, wherein one full time dentist was provided to treat a one year backlog of patients as well as maintain adequate routine and urgent care for 1,500 prisoners."

To proceed in the district court with a claim under the FTCA, a claimant must first exhaust the available administrative procedures. 28 U.S.C. § 2675. The exhaustion requirement is jurisdictional and may not be waived. Plyler v. United States, 900 F.2d 41, 42 (4th Cir. 1990).

17

Although plaintiff has failed to demonstrate exhaustion by providing a copy of the requisite Standard Form 95 ("SF 95"), he does present a letter, dated July 24, 2006, to him from the BOP's Beckley Consolidated Legal Center ("CLC"). The letter states, in relevant part:

> Your claim has been considered for administrative settlement under the Federal Tort Claims Act, 28 U.S.C. § 2671, et. seq., and authority granted under 28 C.F.R. § 0.172. You claim governmental liability in the amount of $75,000.00 for personal injury that occurred from December 4, 2003 until February 3, 2005. Specifically, you allege you were denied appropriate dental treatment for a cavity in tooth #11.
>
> In accordance with Title 28, United States Code, Section 2401(b), "A tort claim against the United States shall be forever barred unless it is presented in writing to the appropriate Federal agency within two years after such claim accrues . . . ." Your reported date of injury on your submitted tort claim was from December 4, 2003 to February 3, 2005. As this claim was filed on June 13, 2006, it has been filed beyond the two-year statute of limitations. **Accordingly, your claim will only be reviewed for the period beginning June 13, 2004 to February 3, 2005**.
>
> Investigation into your claim reveals that you were seen by the dental staff on several occasions, to include January 24, 2005, which was the first time you mentioned pain in tooth #11. You were treated with antibiotics and Ibuprofen. You were also scheduled to see dental for complete care. On February 3, 2005, a root canal was performed on tooth #11. You reported to dental on June 19, 2005 that tooth #11 was causing you more pain. You were again prescribed antibiotics and Ibuprofen. You have been seen six additional times from June 11, 2005 through March 29, 2006, and reported that tooth #11 was not causing you any more problems.
>
> As you have been provided appropriate dental care and there is no evidence [that] an act or omission of a government employee is a factor in your loss, your claim is denied. **This is a final denial of your claim**. If you are not satisfied with this determination, **you have six months from the date of the mailing of this notification to bring suit in an appropriate United States District Court, should you wish to do so**.

(Emphasis added.)

Plaintiff timely filed suit in this court. As the letter from the CLC indicates, plaintiff exhausted his FTCA claim only for such claims that occurred between June 13, 2004, and February 3, 2005. Accordingly, the sum of plaintiff's FTCA claims that the court will review are such claims

18

that, between June 13, 2004, and February 3, 2005, he sustained injury to tooth number 11 because he was denied "adequate dental care" due to the BOP's "failure to provide a full time dentist" and "inadequate staffing, wherein one full time dentist was provided to treat a one year backlog of patients as well as maintain adequate routine and urgent care for 1,500 prisoners."

The United States is entitled to sovereign immunity, and cannot be sued without its consent. FDIC v. Meyer, 510 U.S. 471, 475 (1994). The FTCA operates to waive the sovereign immunity of the United States such that the government may be "liable in tort in the same manner and to the same extent as a private individual under like circumstances" under the law of the state in which the conduct occurred. 28 U.S.C. § 2674; Baum v. United States, 986 F.2d 716, 719 (4th Cir. 1993); see also Williams v. United States, 50 F.3d 299, 305 (4th Cir. 1995) (the FTCA provides a limited waiver of sovereign immunity for torts committed by agents or employees of the United States acting within the scope of their employment). As a waiver of immunity, the FTCA is to be "strictly construed, and all ambiguities [ ] resolved in favor of the sovereign." Robb v. United States, 80 F.3d 884, 887 (4th Cir.1996). The FTCA contains a number of exceptions, including a discretionary function exception. Hawes v. United States, 409 F .3d 213, 216 (4th Cir.2005). The discretionary function exception excludes from the FTCA's waiver of sovereign immunity

> any claim based upon an act or omission of an employee of the Government, exercising due care, in the execution of a statute or regulation, whether or not such statute or regulation be valid, or based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused.

28 U.S.C. § 2680(a).

Assuming, arguendo, that the actions plaintiff complains of do not fall within the discretionary function exception to the FTCA, plaintiff fails to state a claim under ordinary

negligence principles. If no exception applies and sovereign immunity is waived under the FTCA as to an officer's negligent acts, the United States may be held liable in monetary damages for personal injury, property loss, or death to the plaintiff, caused by the acts of a governmental employee within the scope of his employment, if those acts meet the definition of negligence under state law. 28 U.S.C. § 1346(b); Rayonier Inc. v. United States, 352 U.S. 315, 319-20 (1957); United States v. Muniz, 374 U.S. 150, 152-53. To prove negligence under Virginia law, a plaintiff must (1) identify a legal duty of the defendant to the plaintiff, (2) a breach of that duty, and (3) injury to the plaintiff (4) proximately caused by the breach. Talley v. Danek Medical Inc., 179 F.3d 154, 157 (4th Cir. 1999). The court finds that plaintiff's complaint fails to state a claim for negligence owing to the asserted denial of dental care to which he felt that he was entitled.[14] It is undisputed that plaintiff received dental care. It is clear that plaintiff received emergency dental care in a timely fashion and was promptly provided with medication for his complaints of pain.[15] Notably, it appears that plaintiff's access to dental care has been equitable, given that there are more than 1,600 prisoners at USP Lee, some of whom surely need dental care, too. It is also clear that the dental care plaintiff received was adequate. In fact, plaintiff has sustained no actionable injury, because the tooth at issue in his FTCA claim, tooth number 11, was preserved.

The crux of plaintiff's claim, however, is that USP Lee owes a duty to plaintiff to have a full-time dentist employed at all times. Plaintiff's pleadings indicate that USP Lee employed a part-time

---

[14] The court notes that, insofar as plaintiff attempts to allege a claim of negligent supervision, such claims are nonactionable under the FTCA. See Sheridan v. United States, 969 F.2d 72, 74 (4th Cir. 1992).

[15] Regarding plaintiff's claim that he did not receive root canals and restorations in a timely fashion, it is not clear that restorative treatments and endodontic treatments, such as root canals, constitute emergency care.

dentist at all times, and has had a full-time dentist in its employ since January 2005. Even if BOP policies and regulations required a full-time dentist, the failure to employ a full-time dentist would not constitute negligence. See Talley, 179 F.3d at 159 (holding, inter alia, that a manufacturer's alleged failure to comply with approval requirements of Federal Food, Drug, and Cosmetic Act did not establish negligence per se, stating: "Where a statutory provision does not define a standard of care but merely imposes an administrative requirement . . . violation of such requirement will not support a negligence per se claim"). Furthermore, the court is not positioned to second-guess the prison's staffing decisions. Functions of prison management must be left to the broad discretion of prison administrators to enable them to manage prisons safely and effectively. Gaston v. Taylor, 946 F.2d 340, 343 (4th Cir. 1991). And, given that plaintiff states that USP Lee was without a full-time dentist owing to its former full-time dentist's decision to resign, it does not appear that the United States could be held responsible for that individual's decision.

Thus, the government cannot be liable on plaintiff's claims that prison officials were negligent in not having a full-time dentist employed at USP Lee at all times. Accordingly, the court finds that plaintiff has not presented any FTCA claims on which relief can be granted, and will dismiss the FTCA claims without prejudice pursuant to 28 U.S.C. § 1915A(b)(1).

### C. "Mail Violations"

Plaintiff's allegations of "mail violations" fail to state a claim upon which relief may be granted. Plaintiff claims that he "received legal mail through the regular mail system which had been opened" on twelve occasions between April 18, 2005, and October 10, 2006. Given that this mail came through the "regular mail system," plaintiff cannot and does not allege that prison officials had adequate notice that the mail at issue was, in fact, legal mail. The plaintiff does not allege that the

21

identity of the legal sender was specifically identified, or that the confidential nature of the mail was adequately marked. See 28 C.F.R. §§ 540.18-540.19; United States v. Stotts, 925 F.2d 83 (4th Cir. 1991). Regarding plaintiff's claims that, on five occasions between August 30, 2005, and October 13, 2006, he "received clearly marked legal 'special mail' or 'attorney-client' mail" that prison mail handlers opened outside his presence, those claims, too, fail to state a claim upon which relief may be granted. In order to establish an access-to-courts claim under the First Amendment or a violation of the Sixth Amendment right to counsel, an inmate must demonstrate that he suffered actual harm or prejudice to his ability to communicate with the court or counsel. See Lewis v. Casey, 518 U.S. 343, 349 (1996); White v. White, 886 F.2d 721, 723-724 (4th Cir. 1989); Lockley v. Albemarle-Charlottesville Regional Jail, 2006 U.S. Dist. LEXIS 39533, *4 (W.D. Va. May 30, 2006). Although plaintiff alleges that "clearly marked legal 'special mail' or 'attorney-client' mail" had been opened, he fails to show (or even allege) that it had been read and that he was hindered in his ability to access the courts or receive legal assistance. In the absence of any actual harm or prejudice, the court concludes that the plaintiff's allegations regarding the opening of his legal mail are not cognizable under Bivens.

Prison officials may regulate outgoing mail as long as the regulations meet the reasonableness test set out in Turner v. Safley, 482 U.S. 78 (1987), and further refined in Thornburgh v. Abbott, 490 U.S. 401, 404 (1989). Such regulations are valid if reasonably related to legitimate peneological interests, giving prison officials considerable deference in regulating the delicate balance between prison order and outsiders' access to the prison environment. Thornburgh at 404-07. Although reasonable access by prisoners to both state and federal courts and to communication with attorneys is a long-established right, see Ex parte Hull, 312 U.S. 546 (1941), see also Procunier v. Martinez,

Case 7:06-cv-00675-GEC-mfu   Document 25   Filed 04/12/07   Page 22 of 24   Pageid#: 228

416 U.S. 396 (1974) (overruled on other grounds by Thornburg, 490 U.S. at 413-14), the inmate must show some interference with this right or some deficiency in the legal resources available to him and must provide evidence of actual injury or specific harm to some litigation involving a challenge to the conditions of his confinement or the fact of his confinement. Lewis, 518 U.S. at 349; Strickler v. Waters, 989 F.2d 1375 (4th Cir. 1993). Plaintiff does not allege any facts which demonstrate that any of the defendants' alleged actions concerning his mail affected any pending case, caused him to miss any court-imposed deadlines, or in any way hindered his correspondence with the courts or his attorney. In sum, plaintiff has failed to allege any facts which establish that he suffered any harm because of "violations" concerning allegedly privileged mail. As such, he has failed to demonstrate any actual injury or specific harm resulting from any action on the part of the defendants relating to his right to access the courts or to communicate with his attorney. Accordingly, plaintiff's allegations of "mail violations" will be dismissed pursuant to 28 U.S.C. § 1915A(b)(1) for failure to state a claim upon which relief may be granted.

### III. Conclusion

Based on the foregoing, the court will dismiss plaintiff's claims of legal mail violations and of deliberate indifference to his dental needs pursuant to 28 U.S.C. § 1915A(b)(1) for failure to state a claim upon which the court may grant relief. The court will likewise dismiss plaintiff's FTCA claims pursuant to 28 U.S.C. § 1915A(b)(1) for failure to state a claim upon which the court may grant relief. Plaintiff's remaining claims will be dismissed pursuant to 42 U.S.C. § 1997e(a) for failure to exhaust all available administrative remedies.

Plaintiff is advised that he may appeal this decision pursuant to Rules 3 and 4 of the Federal Rules of Appellate Procedure by filing a notice of appeal with this court within 30 days of the date

of entry of this Order, or within such extended period as the court may grant pursuant to Rule 4(a)(5).

The Clerk of the Court is directed to send copies of this Memorandum Opinion and accompanying Order to plaintiff.

**ENTER**: This _12ᵗʰ_ of April, 2007.

_[signature]_

_____
United States District Judge